UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY ALLAN THOMPSON,
and LAURA JEAN THOMPSON,

      Appellants,

v.

CREDIT UNION FINANCIAL GROUP,

      Appellee.

_____/

CASE NO. 1:10-CV-1036

HON. ROBERT J. JONKER

## **OPINION**

### Introduction

      This bankruptcy appeal presents an apparent clash between two bankruptcy code provisions. On the one hand, section 365(d)(1) says unequivocally that an executory contract–in this case a car lease – is deemed rejected in a Chapter 7 case if the Trustee fails to assume it within 60 days (or other period set by the Bankruptcy Court). 11 U.S.C. § 365(d)(1). The rejection of a lease ordinarily leads to discharge under section 524(b)(2) of any obligations under the lease for the Chapter 7 debtor. On the other hand, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA") added a new section 365(p), which provides an opportunity for an individual Chapter 7 debtor to assume a lease even after the Trustee rejects it. If the Debtor does so but then fails to perform, does the Debtor lose not only the property subject to lease but also the protection of discharge? The Bankruptcy Court answered "yes," and rejected the Debtor's attempt to enforce the discharge when the lessor sought and obtained a post-discharge default judgment against the Debtor. This Court disagrees and holds that a Debtor's unapproved assumption under section 365(p) does

not eliminate the discharge protection that flows from the Trustee's rejection of the lease. To set aside the discharge protection, a lessor must obtain not only the Debtor's assumption but also Bankruptcy Court approval under the reaffirmation provisions of section 524(c), or other appropriate Code provisions.

**Facts**

Debtors Anthony Allan Thompson and Laura Jean Thompson filed for relief under Chapter 7 of the Bankruptcy Code on April 3, 2008. (R. 129.) On June 15, 2008, while the bankruptcy proceedings were pending, Mr. Thompson entered into a written agreement with Lake Michigan Credit Union ("Lake Michigan") entitled "Assumption of Closed End Vehicle Lease" (the "Assumption Agreement"). (R. 131.) The Assumption Agreement, in its entirety, states:

> On 2-17-04, the below signed debtor(s) entered into a Closed End Vehicle Lease Agreement with Credit Union Financial Group, Inc., for the leasing of a 2004 Honda Civic 2HQBS16334H539450. The undersigned has/have filed bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Michigan, Case No. 08-02899.
>
> The undersigned hereby assume(s) the Closed End Vehicle Lease Agreement, notwithstanding the filing of bankruptcy proceedings, and agree(s) to perform all of the terms of the Closed End Vehicle Lease Agreement.
>
> The undersigned will provide for such assumption in bankruptcy schedules filed in the above-referenced proceeding.

(R. 131.) The lease itself provides for a term of sixty months, starting in March 2004, and for monthly payments of $206.28. (R.139.) The lease also provides for penalties for early termination. (R. 140-41.)

Mr. Thompson continued to retain physical possession of the car and to pay the monthly lease amounts for several more months. (R. 129.) Eventually the Thompsons were no longer able to

afford the lease payments. (*Id.*) In November 2008, Mr. Thompson surrendered the car to Credit Union Financial Group, Inc. ("Credit Union"), Lake Michigan's assignee. (*Id.*) Only three more monthly payments, totaling just over $600, were due on the lease at the time Mr. Thompson relinquished the car. (*See* R. 139.)

The bankruptcy proceedings continued. In their Statement of Intention, dated December 12, 2008, Mr. and Mrs. Thompson specified the 2004 Honda Civic as the only property in the estate securing any of their debts and checked a box indicating that this "property will be surrendered." (R. 126.) The schedule includes a place for a description of any leased property, the lessor's name, and a statement that the "[l]ease will be assumed pursuant to 11 U.S.C. § 362(h)(1)(A)." Mr. and Mrs. Thompson described no leased property in this section, nor did they check the box indicating that the lease would be assumed. Their completed Statement of Intention thus reflects not a hint that the Thompsons intended to retain the benefits or obligations of the lease.

On March 20, 2009, the Bankruptcy Court granted Mr. and Mrs. Thompson a discharge under 11 U.S.C. § 721. (R. 127.) The discharge form explains that the discharge prohibits "any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from a debtor." (R. 128.) The discharge form elaborates that "[t]he chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed." (*Id.*) The discharge form also lists examples of common types of debts not discharged in a Chapter 7 bankruptcy, including "[d]ebts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the

3

Bankruptcy Code requirements for reaffirmation of debts," as well as "[d]ebts the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged." (*Id.*) The discharge form makes no mention of lease obligations assumed by a debtor under 11 U.S.C. § 365(p). (*Id.*)

In January 2010, almost a year after the bankruptcy discharge issued, Credit Union notified Mr. Thompson that it intended to collect on the lease debt. (R. 129.) On January 28, 2010, Credit Union filed suit against Mr. Thompson for breach of the lease agreement. (*Id.*) On May 25, 2010, a default judgment entered against Mr. Thompson in the amount of $7,551.06, reflecting damages including early termination penalties, plus interest, costs and attorney fees. (*Id.*) On August 2, 2010, Mr. Thompson moved the Bankruptcy Court to hold Credit Union in contempt of the discharge injunction, asserting that the Assumption Agreement was not enforceable because it failed to meet the reaffirmation requirements of 11 U.S.C. § 524(c). (R. 129, R. 41.) The Bankruptcy Court denied the motion, concluding that despite the lack of reaffirmation under section 524(c), the assumption under 11 U.S.C. 365(p) created a post-petition liability outside the scope of the discharge. (R. 41.) This appeal ensued.

## Analysis

    A.    *Section 365(d)(1) Mandates Discharge of Executory Lease Obligations the Trustee Does not Assume.*

Section 365(d)(1) provides explicitly that in a Chapter 7 bankruptcy, "if the trustee does not assume or reject an executory contract or unexpired lease of . . . personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected." Thus the plain language

of the Bankruptcy Code makes it clear that a personal property lease is rejected if a trustee fails to accept it. It is equally clear that a rejected personal property lease ordinarily falls within the scope of the bankruptcy discharge. Under section 365(g)(1), a trustee's rejection of a lease "is treated as a breach of the lease that took place immediately prior to the filing of the bankruptcy petition." *In re Miller*, 282 F.3d 874, 877 (6th Cir. 2002). Under the doctrine of relation back, the breach becomes a pre-petition debt subject to discharge under 11 U.S.C. § 727(b). *Id.* Thus, "the situation that results from a breach of a lease due to rejection of it under section 365 is that the lessor becomes an unsecured creditor with a pre-petition claim for damages." *Id.* The lessor "is entitled to damages for the breach, even damages arising after the rejection of the lease, but those damages are considered a pre-petition claim." *Id.* at 878.

        B.     *Section 365(p) Does not Address or Alter the Normal Discharge Rule.*

BAPCA added a new subsection (p) to section 365. This new subsection provides that if a trustee does not assume a personal property lease under section 365(d), the leased property is no longer property of the estate. 11 U.S.C. § 365(p)(1). The new subsection goes on to state:

> (2) (A) If the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract.
> (B) If, not later than 30 days after notice is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate.
> (C) The stay under section 362 and the injunction under section 524(a)(2) shall not be violated by notification of the debtor and negotiation of cure under this subsection.

11 U.S.C. § 364(p)(2)(A)-(C). The legislative history of BAPCA does not address new subsection (p) specifically, and commentaries as well as court decisions have wrestled with ambiguities in the

5

interaction between the new subsection and other provisions of the code. *See, e.g.*, *In re Eader*, 426 B.R. 164 (Bankr. D. Md. March 22, 2010); *In re Creighton*, 427 B.R. 24 (Bankr. D. Mass. Feb. 16, 2007); 1-15 Collier Consumer Bankruptcy Practice Guide ¶ 15.04[8]. This case arises out of such an ambiguity. It presents the question of whether new subsection (p) affects the application of the discharge injunction on the facts in this case. That is, does the assumption by the debtor give the debtor not only an ongoing right to possession, which the debtor would otherwise lose on rejection, but also eradicate the debtor's discharge protection? The lessor and the Bankruptcy Court in this case concluded that the assumption eliminates the discharge protection. The Court disagrees.

First, the plain language of 365(p) does not say that the debtor loses the discharge protection upon assuming the lease. To the extent 365(p) addresses discharge at all, it is only to give the debtor and lessor an opportunity to negotiate a cure. New subsection (p) says nothing whatsoever about suit after discharge, or about the overall effect of discharge in the event of breach. This is entirely consistent with the bankruptcy discharge form's own "Explanation of Bankruptcy Discharge in a Chapter 7 Case," which lists a variety of debts excepted from discharge but nowhere mentions any exception for lease assumptions under subsection 365(p). Thus nothing in either the statute or the plain language explanation on the discharge form distributed to chapter 7 petitioners advises a debtor that his or her lease assumption under section 365(p) lacks discharge protection.

Second, 365(p) focuses on possession of property, not on ultimate liability after discharge. At the outset, section 365(p)(1) emphasizes that once a lease is rejected, the property is no longer part of the estate, and the lessor may take possession of it. This simply restates the general rule for all such property. Consistent with that emphasis on possession, section 365(p)(2) goes on to provide a mechanism for a debtor and lessor to agree to terms that allow the debtor to maintain possession

of the property.[1] Section 365(p)(2) uses the language of assumption, but the assumption is not self-executing in the way that assumption or rejection under section 365(d) is. Rather, 365(p)(2) says that, after certain conditions are satisfied, the "liability under the lease will be assumed," suggesting that more is needed for assumption of liability than a simple provisional agreement between the lessor and debtor. This dovetails with the earlier language in subsection (p) providing room to negotiate cure and nothing more, which in turn comports with the general rule of section 365(a) that requires judicial approval of any assumption by the trustee. If a trustee may not assume a personal property lease without judicial approval, it makes little sense that a debtor would be permitted to do so unsupervised. Indeed, section 365(p)(3) ensures ultimate court involvement in Chapter 11 and 13 bankruptcies by requiring judicial confirmation of the bankruptcy plan, including any decision to assume a personal property lease. It would be inconsistent for a Chapter 7 debtor to be able to by-pass judicial approval of an assumption while such approval is required in the contexts of other types of bankruptcies.

Finally, the Bankruptcy Code elsewhere explicitly requires judicial approval of a debtor's agreement to except an otherwise dischargeable debt from discharge. 11 U.S.C. § 524(c). Section 524(c) strictly limits the enforceability of "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under [the Code] . . . whether or not discharge of such debt is waived." Such an agreement

---

[1] Though neither party has raised this issue, the record does not actually establish that the procedural requirements for a valid assumption under section 365(p) were satisfied in the first instance. The record does not reflect, for example, whether Mr. Thompson "notif[ied] the creditor in writing that [he] desire[d] to assume the lease." 11 U.S.C. § 365(p)(2)(A). On the contrary, this record leaves open the possibility that the lessor contacted Mr. Thompson first, potentially in breach of the automatic stay. The Court reaches no conclusion regarding the validity of the assumption under section 365(p) but assumes for the purposes of analysis that the assumption is valid.

is enforceable only if the agreement was made before the granting of discharge; the debtor received certain disclosures described in section 524(k); the agreement has been filed with the court; the debtor has not rescinded the agreement at any time before the later of the discharge or sixty days after the date the agreement is filed with the court; in the case of an individual debtor not represented in the course of entering the agreement, a court hearing in which the court approves the agreement as not imposing an undue hardship on either the debtor or a dependent of the debtor, and in the best interest of the debtor.  *Id.*  Section 524(c) thus establishes not just one but a series of safeguards, a web of protections for debtors, in keeping with the policy of giving debtors a fresh start.

        C.      *In this Case, the Well-Established Reaffirmation Process of Section 524(c) Never Took Place.*

The Bankruptcy Court concluded that Section 365(p) functions entirely independently of section 524(c) and other Code provisions, and that a chapter 7 debtor therefore loses discharge protection by agreeing to assume the lease rejected by the trustee, even without Bankruptcy Court approval, and even if the Debtor changes his mind and surrenders leased property before discharge.  In reaching this conclusion, the Bankruptcy Court focused on section 365(p)(2)(C), which provides that "[t]he stay under 362 and the injunction under section 524(a)(2) shall not be violated by notification of the debtor and negotiation of cure under this subsection."  The Bankruptcy Court reasoned that Congress must have "contemplated that lease assumption agreements might be made after entry of the discharge, otherwise there would be no need to authorize the parties to negotiate such agreements notwithstanding the discharge injunction under § 524(a)(2)."  (R. 42.)  However, observed the Bankruptcy Court, "to be valid, a reaffirmation agreement must be 'made' before discharge."  (*Id.*)  The Bankruptcy Court found that Congress could not have intended that parties

8

comply with both 365(p) and 524, because this would be "an impossible feat when the parties negotiate post-discharge." (*Id.*) The Bankruptcy Court "[did] not believe that Congress would authorize parties to negotiate lease assumption agreements that would not, as a matter of law, be enforceable." (*Id.*) Therefore, the Bankruptcy Court concluded, Congress must have intended that 365(p) assumption agreements waive the discharge injunction even without 524(c) reaffirmation or other court approval.

This Court is not persuaded. Both the language and policies of the Code require rejection of the lessor's position. To permit an unapproved section 365(p) assumption to operate as lessor urges here would ignore the unequivocal language of section 365(d)(1), and its resulting impact on discharge under section 524(b)(2). Moreover, even though section 365(p), added by BAPCA in 2005, creates a potential textual conflict with these long-established Code provisions, the potential conflict is easily avoided by limiting the operation of any unapproved section 365(p)(2) assumption to suspending what would otherwise be the lessor's right to retrieve the leased property – a right expressly recognized by section 365(p)(1) – on mutually agreed terms, but leaving unaffected the ultimate right of discharge triggered by the Trustee's rejection of the lease and the normal operation of section 524(b)(2).

The policies of the Code reinforce this textual construction. In the first place, as this case demonstrates, the "fresh start" policy of the Code would be in jeopardy if Chapter 7 debtors could unwittingly bind themselves to section 365(p) assumptions that leave them not only without their leased car but also with all the liability they would have had absent the bankruptcy filing. *See, e.g.*, *In re Brinley,* 403 F.3d 415, 418 (6th Cir. 2005) ("One of the purposes of federal bankruptcy law is to accord the debtor a 'fresh start' from past financial difficulties.") (citing *In re Holland*, 151 F.3d

547, 548 (6th Cir. 1998)); *In re Patel*, 565 F.3d 963, 967 (6th Cir. 2009) ("Discharging a bankrupt party's debts is central to bankruptcy's purpose of providing a 'fresh start' to filers."). Second, the "shared sacrifice" policy of the Code would also be in jeopardy if a lessor had the power to deal privately with debtor in a way that preserved the full value of the lease even after discharge, while a similarly situated creditor could achieve that result only with a section 524(c) reaffirmation agreement. *See In re CSC Industries, Inc.*, 232 F.3d 505, 508 (6th Cir. 2000) ("[A] fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally.").

The Bankruptcy Court's construction rests almost entirely on a perceived conflict between section 365(p)(2)(C) and section 524(c). This is too narrow a focus. It does not account for the general and self-executing rule of discharge under section 365(d)(1). Nor does it account for other ways to read section 365(p) in harmony with both section 365(d)(1) and the reaffirmation provisions of section 524(c), as the Court has already noted. It also does not account for the Thompsons' Statement of Intention, in which the Thompsons explicitly state their intention to surrender the Honda Civic and express no intention to assume the lease. (R. 126.) Finally, if parties desire to enter into a 365(p) assumption post-discharge, when a reaffirmation under 524(c) is ordinarily not possible, the parties could petition for entry of a *nunc pro tunc* order, could move for judicial approval under 365(a), as the Trustee would have ordinarily had to do, or could seek to have the matter re-opened in a way that would permit appropriate relief. Section 524(c) need not be an exclusive route to a discharge avoiding assumption of liability under 365(p).

The weight of available judicial authority is also contrary to the Bankruptcy Court's construction. Authority is limited, but multiple courts have held, like this Court, that a debt assumed under 365(p) falls within the scope of the discharge injunction unless there has been a court approval

of the assumption, under 524(c) or otherwise. *See In re Eader*, 426 B.R. 164, 166 (Bankr. D. Md. March 22, 2010) (concluding that "although [s]ection 365(p)(2) permits an individual debtor in a Chapter 7 case to assume a lease of personal property and that such assumption does not require any approval by the bankruptcy court, the personal obligation of the debtor under the assumed agreement is subject to the discharge provided by [s]ection 524(a) unless the debtor reaffirms the indebtedness under the lease in compliance with [s]ection 524(c) *et seq*."); *In re Creighton*, 427 B.R. 24, 28 (Bankr. D. Mass. Feb. 16, 2007) ("It would thus appear that an assumption agreement negotiated and entered into under § 365(p)(2), when not otherwise excepted from discharge by § 523(a), is an agreement to which § 524(c) pertains; it is a species of reaffirmation agreement."). Other courts have recognized the issue and suggested that some sort of judicial approval of a 365(p) assumption is a necessary condition for waiver of discharge. *See, e.g., In re Finch*, No. 06-14016-SBB, 2006 WL 3900111, *1 (Bankr. D. Colo. October 2, 2006) ("The language of section 365(p) does not appear to necessarily lead to waiver of or exception to the discharge of a debt by way of assumption."); *In re Rogers*, 359 B.R. 591, 593 (Bankr. D. S.C. Jan. 30, 2007) (noting that a lease assumption under 365(p) "may not necessarily lead to an exception from discharge of the liability since § 524 has not been amended to make reference to new § 365(p)(2) . . . . 'Personal liability on the lease will ordinarily be discharged if the chapter 7 discharge is entered, presumably even if the lease is assumed.'") (quoting 1-15 *Collier Consumer Bankruptcy Practice Guide* ¶ 15.04[8])); *In re Gaylor*, 379 B.R. 413, 414 (Bankr. D. Conn. Nov. 29, 2007) (denying motion for court approval of a 365(p)(2) assumption because such an assumption "does not require court approval or other court action," but noting explicitly that the denial of the motion "is not an adjudication of (1) the effect (if any) the Debtor's impending discharge may have in respect of the purportedly assumed Lease

11

Agreement or (2) the enforceability of the Debtor's purported 'waive[r]' of such discharge . . . because neither [issue] is properly before the court."); *In re Walker*, No. 06-11514C-7G, 2007 WL 1297112, *1 (Bankr. M.D.N.C., April 27, 2007) (declining to pass judgment on lease assumption under 365(p) and noting that "[r]eaffirmation and waiver of discharge are dealt with in section 524(c), which has not been invoked.").

The parties and the Court have identified only a few bankruptcy decisions besides the case now before the Court finding that a debtor may waive the discharge injunction on a particular personal property lease debt solely by entering into a 365(p) assumption and without any form of judicial approval. *See In re Mortenson*, 444 B.R. 225 (Bankr. E.D.N.Y. January 19, 2011), *In re Farley*, No.10-76018, 2011 WL 1304458 (Bankr. E.D.N.Y. April 6, 2011), and *In re Ebbrecht*, No. 10-79371, 2011 WL 1793272 (Bankr. E.D.N.Y. May 11, 2011). Each of these cases ultimately rests on the authority and analysis of the Bankruptcy Court decision in this case. *Mortenson* expressly embraces the reasoning of the Bankruptcy Court in this case, and the other two decisions rely on *Mortenson*. For the same reasons the Court is not persuaded by the bankruptcy decision underlying this appeal, the Court is not persuaded by the *Mortenson* case and its progeny. Moreover, *Mortenson*, *Farley* and *Ebbrecht* are all distinguishable on their facts. In particular, none of those cases involve an assumption agreement the debtor abandoned before discharge**.**

The facts of this case highlight reasons for requiring a 524(c) reaffirmation or other judicial approval of an assumption agreement under 365(p) for the agreement to be excepted from discharge. Nothing of record demonstrates that the Debtor understood his assumption in June of 2008 would expose him, in lessor's view, to the kind of post-discharge liability embodied in the default judgment, especially after he turned the car back over to the lessor in November of 2008, before

discharge entered, with just over $600 left to pay for full performance of the entire five-year lease. Had he known, the Debtor could have made an informed choice about his options. But nothing in the short assumption form expressly addressed how a later discharge would apply, especially if the Debtor changed his mind about the assumption and turned the car back to the lessor before the discharge entered. And no one presented the assumption to the Bankruptcy Court for approval under section 365(a), as the Trustee would have had to do had he wanted to assume the lease; or under section 524(c), as any other creditor seeking a reaffirmation would have had to do. Even the Court-approved Discharge Form warned the Debtor only that debts reaffirmed by the Debtor under 524(c) may be excepted from discharge, but said nothing about section 365(p) assumptions that had never been approved by the Bankruptcy Court.

In this case, the debtor assumed the automobile lease and went on to surrender the vehicle while the bankruptcy proceedings were pending. But for the three month interlude during which the debtor retained the car under the three paragraph Assumption Agreement, the debtor would have his discharge now, and the Credit Union would have had its car back and occupied the exactly the same position as the other creditors at the close of the bankruptcy proceedings. On the Credit Union's theory, as soon as the debtor surrendered the car in November, fresh, post-petition breach occurred, and the Credit Union could have sued immediately in state court without violating the automatic stay or any other restriction. The Credit Union acknowledged this during oral argument. There is no way to know what would have happened if such a suit had occurred immediately after the debtor relinquished the automobile, and before discharge had entered. The potential of such a suit during the pendency of bankruptcy proceedings underscores why the policies as well as the text of the Bankruptcy Code cannot reasonably operate as the lessor posits. That the Credit Union, whether for

13

tactical or other reasons, waited until after the close of bankruptcy proceedings to collect on the debt does not change the reality of what the Credit Union's position implies.

## CONCLUSION

Accordingly, for both textual and policy reasons, the Court rejects the lessor's position, **REVERSES** the Bankruptcy Court's denial of the Debtor's Motion seeking enforcement of the discharge and **REMANDS** to the Bankruptcy Court for any further proceedings necessary to fashion an appropriate remedy.


Dated:      July 1, 2011                             /s/ Robert J. Jonker
                                                    ROBERT J. JONKER
                                                    UNITED STATES DISTRICT JUDGE